<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

PATRICIA MOLTA,

        Plaintiff,

HEWLETT-PACKARD EMPLOYEE BENEFITS
ORGANIZATION, a Delaware Non-Stock
Corporation, HEWLETT-PACKARD COMPANY
EMPLOYEE BENEFITS ORGANIZATION
INCOME PROTECTION PLAN and VOLUNTARY
PLAN ADMINISTRATORS, INC.,

        Defendants.

---

Civ. No. 04-1705 (WGB)

**M E M O R A N D U M
O P I N I O N**

**Appearances:**

Steven Gaechter, Esq.
58 Main Street
Hackensack, New Jersey 07601

    Counsel to Plaintiff

Dustin K. Palmer
Marshall R. King
**Gibson, Dunn & Crutcher LLP**
200 Park Avenue
New York, New York 10166

    Counsel to Defendants

**BASSLER, SENIOR DISTRICT JUDGE:**

Plaintiff Patricia Molta ("Plaintiff"), a former employee of Defendant Hewlett-Packard Company, sought long term disability benefits under the Hewlett-Packard Company Disability Plan ("the Plan"). The Plan's independent claims administrator, Voluntary Plan Administrators, Inc. ("VPA") denied Plaintiff her benefits on grounds that she did not qualify as being "totally disabled"

and "continuously unable to perform any occupation," as required under the Plan.

Plaintiff administratively appealed VPA's initial denial of long term benefits, which was affirmed. She subsequently brought this suit against Hewlett-Packard and VPA (collectively as "Defendants"), alleging Defendants wrongfully denied her LTD benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Both Plaintiff and Defendants filed motions for summary judgment.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. On January 30, 2006 the Court heard oral argument.

**I. BACKGROUND**

### A. Plaintiff's Application For Short Term Disability

Prior to her disability, Hewlett-Packard employed Plaintiff as a services associate, a job involving various administrative and secretarial duties. Plaintiff herniated her back in December 1998. She underwent a lumbar laminectomy for the herniation in October 1999, and returned to work effective January 4, 2000. (Hewlett-Packard Exhibit ("HPX") 120.) As a result of increasing back pain, Plaintiff filed a claim for short term disability benefits and ceased working on March 20, 2001. VPA reviewed Plaintiff's claim.

VPA, as the Plan administrator, has the discretionary

2

authority to construe the language of the Plan and to determine whether a claimant is eligible for benefits. (HPX 1-64; Declaration of Janet Curry ("Curry Dec.") at ¶ 4-5.) Applying for short term disability required that Plaintiff submit evidence and prove her inability to "perform in each and every duty of [her] Usual Occupation." (HPX 10.) The record reflects that Plaintiff, in seeking short term disability, filed her claim on the basis of "neurological problems" stemming from injuries to her back. (HPX 336, 379; Defendants' Statement of Undisputed Material Facts ("Defs' Statement") at ¶ 15.) According to VPA, however, Plaintiff's medical records indicated that she suffered from a depressive disorder; therefore, it granted her leave on the grounds of a mental illness rather than on a disability associated with her back. (Defs' Statement at ¶¶ 17, 18; HPX 340.) Defendants provide no explanation for the discrepancy, despite the fact the administrative record shows her disability may have been work related. (HPX 366, 377, 379.)

In connection with Plaintiff's short term disability claim, VPA requested and reviewed medical records for Plaintiff from Dr. Laura Brenner, Plaintiff's psychiatrist, and Dr. Ari Ben-Yishay, Plaintiff's orthopedist and spinal specialist, to determine whether Plaintiff qualified under the terms of the Plan. (Defs' Statement at ¶ 16.)

Plaintiff began seeing Dr. Laura Brenner in October 2000.

(HPX 319, 327.)  In her notes from Plaintiff's initial consultation, Dr. Brenner indicated that Plaintiff suffered from chronic back pain resulting from a fall.  (HPX 319.)  Her notes suggest that Plaintiff was also severely depressed.  (HPX 321.)  On January 8, 2001, she wrote that Plaintiff was suffering from leg spasms and could not sleep and that she had hurt herself in a fall in early December 2000.  (HPX 322.)  Plaintiff continued to meet with Dr. Brenner through at least July 2001.  (HPX 322-333.)

Plaintiff first met with Dr. Ari Ben-Yishay on April 4, 2000.  (HPX 435.)  Dr. Ben-Yishay diagnosed Plaintiff with "failed back surgery syndrome with severe back pain and left leg pain."  (HPX 434.)  He prescribed Percocet® for her pain, and recommended that she consult with pain management specialist Dr. Allan Weissman, from Pascack Valley Hospital, Pain Management Clinic.  (HPX 434.)  As Dr. Ben-Yishay continued treating Plaintiff, he noted that she suffered from degenerative disc disease.  On May 9, 2000, the doctor indicated that there were signs of "post operative changes [in Plaintiff's back]. . . with some epidural fibrosis. . . . [but] no evidence of any residual neural compression or residual disc herniations."  (HPX 433.)  On October 6, 2000, Dr. Ben-Yishay noted that Plaintiff had reduced sensation, he recommended that she consider taking a narcotic pain reliever, Oxycontin®, and determined that additional treatment was a "quality of life decision."  (HPX 432.)  On

December 22, 2000, he wrote that "an updated MRI of the lumbar spine. . . demonstrate[d] post laminectomy changes. . . from her prior surgery." (HPX 429.) Dr. Ben-Yishay's notes from December 2000 do not, however, indicate that Plaintiff fell and hurt her back on December 5th as noted by Dr. Brenner and in forms submitted to VPA. (HPX 429, 430.) Plaintiff continued her treatment with Dr. Ben-Yishay throughout her short term disability leave.

Based on the evidence provided from Dr. Brenner and Dr. Ben-Yishay, on March 22, 2001, VPA approved Plaintiff's request and provided her 52 weeks of short term disability benefits for a "depressive disorder." (Defs' Statement at ¶¶ 16-18.)

On September 13, 2001, in the middle of her short term disability leave, Dr. Vingan met with Plaintiff to provide a second opinion, which was recommended by Dr. Ben-Yishay. (HPX 407.) Dr. Vingan had performed Plaintiff's laminectomy in October 1999. (HPX 435.) He noted that Plaintiff's injury was caused from her falling on December 2, 2000, and that while there were no indications of disc herniation, she suffered from severe degenerative changes to her spine. (HPX 407-409.) Dr. Vignan indicated to Plaintiff that he needed a "discography to properly evaluate the source of [her] pain" and noted that although he could not "clearly explain her current symptoms" based on her recent MRI, there were "clinical concerns for [her] pain. . .

5

[and] non specific radiographic evidence for degenerative disk changes. . . ." (HPX 410.)  He concluded that he "would consider her a surgical candidate only with a moderately clear discography report." (HPX 410.)

As required by the Plan, and separate from her meeting with Dr. Vingan, VPA periodically reassessed Plaintiff's eligibility for short term disability.  (HPX 29.)  VPA continued its request and review of Plaintiff's new medical treatments and notes from Dr. Brenner, Dr. Ben-Yishay, and Dr. Roy Vingan. (Curry Dec. at ¶ 16.)  Additionally, as part of the reassessment process, VPA requested an independent psychiatric evaluation of Plaintiff by Dr. Martin Weiner.  (Curry Dec. at ¶ 17; HPX 287-290, 307.)

On December 4 2001, Dr. Weiner, a psychiatrist and neurologist, concluded in a letter to Hewlett-Packard that Plaintiff was "extremely depressed, and the depression [was] secondary to the pain that she [was] in." (HPX 290.)  He also concluded that Plaintiff would be unable to work at that time or thereafter.  (HPX 290.)  In an addendum to his initial report, dated December 10, 2001, Dr. Weiner expressed additional concerns regarding Plaintiff's condition, noting that she was "extremely depressed" and "in constant pain." (HPX 304-305.)  VPA concluded that Dr. Weiner's psychiatric diagnosis confirmed Plaintiff's eligibility for short term disability benefits. (Curry Dec. at ¶ 17.)

## **B. Plaintiff's Application For Long Term Disability**

In January 2002, Plaintiff filed a claim for long term disability ("LTD") benefits based on degenerative arthritis of the spine and herniated disks. (HPX 236-238.)  According to the Plan, since Plaintiff's initial 52-week period of short term disability ended on March 21, 2002, she would qualify for LTD benefits only if she satisfied the Plan's definition of "total disability" effective March 22, 2002.  (Curry Dec. at ¶ 19.)  To qualify as totally disabled, Plaintiff had to prove that she was "continuously unable to perform *any occupation* for which [she] is or may become qualified by reason of [her] education, training or experience."  (HPX 10 (emphasis added).)  With regard to a disability "caused or contributed to" by mental illness, however, the Plan provides that participant cannot be considered totally disabled unless the participant was hospitalized for a certain period of time.  (Defs' Statement at ¶ 25; HPX 11-12.)  Although Plaintiff was granted short term disability benefits on the presumption of a "depressive disorder," she was never hospitalized during her short term disability leave for depression or a mental illness.

As part of its review of Plaintiff's new request for LTD benefits, VPA again reviewed documents submitted by Dr. Brenner and Dr. Weiner regarding her depressive disorder.  VPA also reviewed materials from Dr. Ben-Yishay, Dr. Vingan, and Dr.

7

Weissman, Plaintiff's pain management physician.  (Curry Dec. at ¶ 20.)

VPA concluded that both Dr. Brenner's and Dr. Weiner's notes demonstrated that Plaintiff suffered from a recurring depressive disorder.  (Curry Dec. at ¶ 20(a), (b).)  Although Dr. Brenner's notes indicated that Plaintiff was depressed, she also wrote that Plaintiff had severe back pain.  (HPX 319, 321, 322, 324, 326.) Dr. Weiner, a psychiatrist and neurologist, concluded the same.

Hired as VPA's independent medical examiner to perform a psychiatric evaluation in reassessing her eligibility for short term disability, Dr. Weiner wrote that Plaintiff suffered from extreme depression, that she was on "high doses of pain medications that affect[ed] her concentration and ability to perform multiple tasks," and that "[her] depression [was] secondary to the pain that she [was] in."  (HPX 304, 305, 299.) In his concluding paragraph, Dr. Weiner wrote that "there [was] no question in [his] mind, that [Plaintiff was] unable to work. . . ."  (HPX 299.)

VPA concluded that the treatment notes of Dr. Ben-Yishay, Dr. Vignan, *supra*, and Dr. Weissman showed "no evidence of a herniated disc" and no explanation for Plaintiff's subjective complaints of pain and that she was able to function.  (Defs' Statement at ¶ 27.)

Dr. Weissman periodically performed examinations and tests

on Plaintiff's back and spine and prescribed various pain relieving drugs such as Dilaudid®, MS Contin®, Soma®, and Neurontin®. (HPX 140, 137, 148, 156.) On January 25, 2002, however, Dr. Weissman wrote in a postscript on a handwritten physical assessment form that Plaintiff was "able to function" and that she could "take care of house." (HPX 159.)

Based on the medical evidence submitted by Plaintiff, VPA concluded that, excluding any physical condition "caused or contributed to by" her depression or mental illness, Plaintiff's record did not otherwise support a determination that she was unable to continuously perform the duties of any occupation that she was qualified to perform and denied her claim for LTD benefits on March 7, 2002. (Defs' Statement at ¶ 28; Curry Dec. at ¶ 21; HPX at 206-208.) VPA did not explain what evidence it excluded on the basis of being "caused or contributed to by" Plaintiff's depression.

Plaintiff administratively appealed VPA's decision. VPA reconsidered Plaintiff's claims and requested additional medical evidence. (Curry Dec. at ¶ 25.) As part of the appeals process, VPA sought an independent review of Plaintiff's complete medical record by Dr. Richard Kaplan, a physical therapist. (HPX 121.) On February 4, 2003, Dr. Kaplan sent VPA his report in which he concluded that Plaintiff suffered from underlying depression and low back syndrom with chronic pain and would be limited to

9

sedentary or light work.  (Curry Dec. at ¶ 26; HPX 126-129.)  Dr.
Kaplan billed VPA for 45 minutes of work.  (HPX 129.)  VPA also
referred Plaintiff's file to a vocational specialist, a non-
physician, to determine jobs Plaintiff could perform based on her
physical limitations.  (Curry Dec. at ¶ 27.)  Defendants
concluded that upon "[a] careful review of [Plaintiff's] claim by
VPA, an independent doctor, and a vocational specialist . . .
[Plaintiff] was not totally disabled, as defined by the Plan . .
. ."  (Curry Dec. at ¶ 28.)  On March 12, 2003, VPA reaffirmed
its denial of Plaintiff's request for LTD benefits. (Curry Dec.
at ¶ 28.)  Plaintiff then brought this action.

**II. STANDARDS OF REVIEW**

**A. Summary Judgment**

Summary judgment will be granted only if the record shows
that "there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 65(c).  Whether a fact is material is determined
by the applicable substantive law.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  An issue involving a material
fact is genuine "if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party."  Healy v. N.Y.
Life Ins. Co., 860 F.2d 1209, 1219 n.3 (3d Cir. 1988), cert.
denied 490 U.S. 1098 (1989).

The moving party has the initial burden of showing that no

genuine issue of material fact exists.  Celotex Corp. v. Carteret, 477 U.S. 317, 323 (1986).  If the moving party satisfies this requirement, the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial.  Id. at 324.  The nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor, Anderson, 477 U.S. at 249, and not just "some metaphysical doubt as to material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In determining whether any genuine issues of material fact exist, the Court must resolve "all inferences, doubts, and issues of credibility . . . against the moving party."  Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983) (citing Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir. 1972)); accord Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1077 n.1 (3d Cir. 1996).

The standard for summary judgment does not change when parties file cross-motions.  Stith v. Prudential Insurance Company of America, 356 F. Supp. 2d 431, 434 (D.N.J. 2005).  The Court must consider the motions independently, and view the evidence on each motion in light most favorable to the party opposing the motion.  Id. (citing Williams v. Philadelphia Hous. Auth., 834 F.Supp. 794, 797 (E.D.Pa. 1993), aff'd, 27 F.3d 560

(3d Cir. 1994); Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986)).

### B. ERISA

A court generally applies a *de novo* standard of review to a
plan administrator's denial of ERISA benefits.  Firestone Tire &
Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan
grants an administrator discretionary authority to interpret the
terms or determine eligibility, the court considers the denial
under an "arbitrary and capricious standard" and may reverse the
decision only if it was "clearly not supported by the evidence in
the record or the administrator has failed to comply with the
procedures required by the plan."  Orvosh v. Program of Group
Ins. For Salaried Employees of Volkswagen of America, 222 F.3d
123, 129 (3d Cir. 2000) (citing Abnathya v. Hoffmann-LaRoche
Inc., 2 F.3d 40, 41 (3d Cir. 1993)).  To warrant reversal, the
administrative decision must be "without reason, unsupported by
substantial evidence or erroneous as a matter of law."  Abnathya,
2 F.3d at 45.  The Third Circuit directs this Court to "affirm [a
plan administrator's] determination as long as it is supported by
substantial evidence in the record, even if the record also
contains substantial evidence that would support a different
result."  Johnson v. UMWA Health and Retirement Funds, 125 Fed.
Appx. 400, 403 (3d Cir. 2005).  The Court is not free to
substitute its own judgment, even if it disagrees, where there is

12

no abuse of discretion.  See Mitchell v. Eastman Kodak Company,

113 F.3d 433, 439 (3d Cir. 1997); Abnathya, 2 F.3d at 45, n. 4.

Because the Plan's process for determining a claimant's

eligibility for benefits is separated from the financing of those

benefits, there is no need for this Court to review the denial of

benefits under a "heightened form of the arbitrary and capricious

standard of review." Pinto v. Reliance Std. Life Ins. Co., 214

F.3d 377, 378 (3d. Cir. 2000).  Under this heightened review,

judicial scrutiny increases as the conflict of interest becomes

more acute.  See O'Sullivan v. Metropolitan Life Ins. Co, 114 F.

Supp. 2d 303, 308 (D.N.J. 2000) (citing Pinto, 214 F.3d at 379,

392).  In discussing this "sliding scale approach" the Court of

Appeals distinguished three funding arrangements:

> Employers typically structure the
> relationship of ERISA plan administration,
> interpretation, and funding in one of three
> ways.  First, the employer may fund a plan
> and pay an independent third party to
> interpret the plan and make plan benefits
> determinations.  Second, the employer may
> establish a plan, ensure its liquidity, and
> create an internal benefits committee vested
> with the discretion to interpret the plan's
> terms and administer benefits.  Third, the
> employer may pay an independent insurance
> company to fund, interpret, and administer a
> plan.

Pinto, 214 F.3d at 383.

In this case, since the Plan comes within the first Pinto

arrangement, it does not present a conflict of interest.  Id.

The parties agree that the Plan grants discretionary authority to

13

VPA.  (<u>See</u> Plaintiff's Motion for Summary Judgment (Pl's Motion) at 11; Curry Dec. at ¶ 4.)

In relevant part, the Plan states: "The Claims Administrator shall have the discretionary power to construe the language of the Plan and make the decision on review on behalf of the Company."  (HPX at 54.)  "The Plan is entirely self-funded by HP. . . and is administered pursuant to an administrative services contract with VPA. . . .  As Plan benefits are not paid from VPA's assets, VPA has no incentive to deny claims.  Moreover, VPA is compensated based upon a flat quarterly fee -- not on the number of claims processed, or the dollar amount paid out or the number of claims denied."  (Curry Dec. at ¶¶ 4, 7.)  The arbitrary and capricious standard of review will be applied since the Plan grants discretionary authority to VPA and does not present a conflict of interest.

## III. ANALYSIS

### A. The Relevant Record

A court's review of whether the administrator's decision was arbitrary and capricious is based on the same evidence that was before the administrator.  <u>Mitchell</u>, 113 F.3d at 440.  "Because the purpose of arbitrary and capricious review is to determine the reasonableness of the determination at the time it was made, the reviewing court may only consider evidence that was contained in the record at that time."  <u>Carney v. IBEW Local Union 98</u>

Pension Fund, 66 Fed. Appx. 381, 385-86 (3d Cir. 2003) (citing Mitchell, 113 F.3d at 440).  The purpose behind limiting the record to evidence before the administrators at the time of their final decision, rather than allow evidence as to what occurred *after the administrative process*, is to encourage communication between plan administrators and beneficiaries in order that conflicts be resolved without resort to litigation.  Id. (citing Vega v. National Life Ins. Servs., Inc., 188 F.3d 287, 300 (5th Cir. 1999)).

The parties dispute what constitutes the relevant record. Plaintiff contends that the relevant record consists of all the evidence that was before VPA when it rendered its final denial on March 12, 2003.  Defendants, citing Fahringer v. The Paul Revere Insurance Co., 317 F. Supp. 2d 504, 511 (D.N.J. 2003), argue that the Court must consider only the evidence pertaining to Plaintiff's condition as of the end of the short term disability benefits period, March 22, 2002.  In doing so, Defendants aim to remove from the Court's purview an October 14, 2002 consultation report submitted to VPA, prior to the end of the administrative appeals process, by Dr. Weissman, in which he states that Plaintiff is "disabled from gainful employment through the best of available objective medical information based on the physical exam, MRI study in terms of neurologic changes, chronic severe pain as well as the use of chronic narcotic analgesics."  (Defs'

15

Motion for Summary Judgment ("Defs' Motion") at 16; HPX 143-144.)

The Court disagrees with Defendants' limited view of the record.  Under Carney and Mitchell, consideration of Dr. Wiessman's letter is within the scope of the Court's arbitrary and capricious review.  Mitchell, 113 F.3d at 440.  In Mitchell, the Third Circuit allowed the review of plaintiff's doctors' reports that had been written after the administrator's initial denial of benefits.  Id. at 441-42.  Indeed, the Court of Appeals indicated that the relevant record "is the evidence before the Administrator at the time of [the] *final denial*. . . ."  Id. (emphasis added).  "If the claimant submits additional information to the administrator. . . and requests the administrator to reconsider [its] decision, that additional information should be treated as part of the administrative record."  Vega, 188 F.3d at 300; O'Sullivan, 114 F. Supp. 2d at 310.

Defendants are not prejudiced by this result.  VPA was well aware that Plaintiff had seen Dr. Weissman many times prior to the initial denial of her LTD benefits.  The administrative record, in fact, indicates that VPA received Dr. Weissman's letter on November 13, 2002 and made its own conclusions as to his analysis.  (HPX 114.)  Although, VPA indicated in its final denial letter to Plaintiff that it could not consider medical records for examinations occurring after March 21, 2002 (HPX

16

120), the Plan is not so restrictive.  Upon review of a denied

claim, the Plan provides:

> [VPA] may require the claimant to submit such
> additional facts, documents or other material
> as it may deem necessary or appropriate in
> making its review.  (HPX 32.)

> [VPA] will review the claim, taking into
> account all comments, documents, records, and
> other information submitted relating to the
> claim, without regard to whether such
> information was submitted or considered in
> the initial benefit determination. (HPX 52.)

Defendants notified Plaintiff by its March 12, 2003 final

letter of denial that it was reaffirming the denial of LTD

benefits.  The Court may therefore consider as part of its review

for arbitrary and capriciousness Dr. Weissman's October 14, 2002

consultation report because it was before VPA at the time of the

final denial on March 12, 2003.  See O'Sullivan, 114 F. Supp. 2d

at 310.

### B. The Administrative Decision

As a threshold matter, the Court notes that under the Plan,

the claimant bears the burden of submitting evidence that she is

entitled to disability benefits.  (HPX 24-26); see also Miller v.

Metropolitan Life Ins., 925 F.2d 979, 985 (6th Cir. 1991) (noting

that under the terms of the Plan, the employee was required to

supply proof of continuing disability to the satisfaction of the

insurance company); Marques v. Reliance Standard Life Ins. Co.,

1999 WL 1017475, at *5 (E.D. Pa. Nov. 1, 1999) (concluding that

17

the plaintiff failed to sufficiently support her claim of total disability); <u>Jorstad v. Connecticut General Life Ins. Co.</u>, 844 F. Supp. 46, 58 (D. Mass. 1994) ("a plan administrator has no obligation to manufacture evidence not before it"); <u>Motley v. Metropolitan Life Ins. Co.</u>, 834 F. Supp. 1272, 1280 n.12 (D. Kan. 1993) ("The claimant has the affirmative duty to present to the claims administrator any evidence she wants the administrator to consider").  VPA denied Plaintiff's claim for LTD benefits because as of March 21, 2002 she was unable to present objective medical evidence of her symptoms of pain, she was able to take care of her daily living needs, and because an independent file review by Dr. Kaplan, a physical therapist, indicated that she could perform other occupations.  (HPX 119-122.)  The Court finds it was arbitrary and capricious for VPA to deny Plaintiff's LTD benefits for these reasons.

### 1. Objective Medical Evidence of Plaintiff's Pain

VPA's denial letter, pithily summarizing Plaintiff's medical history, concluded that the "objective medical evidence did not support [her] claims of pain."  (HPX 119-122; Defs' Motion at 15.)  The Court is not persuaded by VPA's conclusion.  It rests on out-of-context statements from a single report by Dr. Vingan and ignores significant evidence to the contrary.  Plaintiff visited Dr. Vingan once on September 13, 2001 upon referral for a secondary opinion from Dr. Ben-Yishay.  (HPX 407.)  VPA's denial

letter highlights Dr. Vingan's statement that he could not "clearly explain her current symptoms," but ignores his remaining conclusions that based on a recent MRI, there were "clinical concerns for [her] pain" and noted that there were "non specific radiographic evidence for degenerative disk changes which might correlate with [her] symptoms." (HPX 121, 410.)  Also overlooked in the VPA denial letter is his determination that Plaintiff was a potential surgical candidate.  (HPX 410.)

The Supreme Court has held that "Plan administrators. . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.  But. . . courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  The Court here need not accord special weight to one doctor over another.  All of Plaintiff's treating physicians concluded that she was suffering from, among other things, degenerative disc disease.  VPA did not seek an independent physical exam of Plaintiff; therefore, its conclusions are solely based on the medical records of Plaintiff's own physicians.  As described supra, those physicians found it reasonable to prescribe

19

significant amounts of various narcotic pain relieving drugs, to perform lumbar discographies and to inject Plaintiff's back with steroids.  VPA cannot, and did not in its denial letter, reconcile those procedures and diagnoses with their reliance on an out-of-context statement by Dr. Vignan that he could not explain her symptoms.  The Court finds that VPA's conclusion that Plaintiff could only be suffering from severe pain if she had a herniated disc is misplaced and is refuted by the objective medical evidence submitted by Plaintiff's treating physicians.

## 2. Adult Daily Living Needs

In its final denial letter, VPA wrote that as of January 25, 2002, Plaintiff "was able to take care of her ADL's and was taking care of her home without negative adverse affects." (HPX 121.)  Although no definition is provided, the Court assumes "ADL" means "adult daily living" needs.  The acronym was apparently lifted from Dr. Weissman's *postscripts* on three handwritten physical assessment reports.  (HPX 154, 157, 159.) The doctor provides no definition or objective findings as to what constitutes adult daily living needs.  Also included in Dr. Weissman's notes, which VPA conspicuously excluded from its denial letter, are Plaintiff's descriptions of her pain as, among other things, "throbbing," "burning," "constant," "always present but gets worse at times," "horrible," and eight on a scale of one to ten.  (HPX 155, 158, 160.)  Ignoring Dr. Weissman's

consultation report on October 14, 2002 in which he wrote that
Plaintiff was "disabled from gainful employment through the best
of available objective medical information based on physical
exam, MRI study in terms of neurologic changes, chronic severe
pain as well as the use of chronic analgesics," VPA nonetheless
found that "[b]ased on the objective medical evidence. . .
[Plaintiff's] medical records indicate[d] she could function and
work."  (HPX 144; Curry Dec. at ¶ 21.)

     "Generally, when a plan administrator chooses to rely on the
medical opinion of one doctor over that of another in determining
whether a claimant is entitled to ERISA benefits, the plan
administrator's decision cannot be said to have been arbitrary
and capricious because it would be possible to offer a reasoned
explanation, based upon the evidence, for the plan
administrator's decision."  McDonald v. Western-Southern Life
Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003) (citing Abnathya, 2
F.3d at 47).  In this case, however, considering Dr. Weissman's
medical reports on a whole, it is not possible to reach a
reasoned explanation for Defendants' decision because it simply
ignores all of the doctor's unfavorable conclusions.  Defendants
argue that the Court should rely on Dr. Weissman's cacographical
notes as "objective medical evidence" that Plaintiff was capable
of working.  But having considered the entire administrative
record, including all of Dr. Weissman's treatment records, the

Court finds that VPA acted arbitrarily and capriciously in its
determination that Plaintiff was capable of working based on a
postscript to Dr. Weissman's physical assessment report.

### 3. Dr. Kaplan's Review

VPA's final denial letter also states that it relied on Dr.
Kaplan's conclusions.  VPA referred Plaintiff's file to Dr.
Kaplan, a physical therapist, for an independent review.  (HPX
121.)  Dr. Kaplan's 45 minute review of this extensive record led
him to conclude that Plaintiff suffered from "[l]ow back syndrome
with chronic pain and underlying depression."  (HPX 127, 129.)
Dr. Kaplan's report, though, is inaccurate.  For example, it
correctly states that Plaintiff was treated with Oxycontin® and
Dilaudid® but erroneously finds that "those prescriptions [were]
issued between November 2002 and December 2002."  (HPX 126.)  Dr.
Weissman's records reflect that Plaintiff was prescribed narcotic
pain relievers, including Oxycontin®, Dilaudid® and others, as
early as June 2001.  (HPX 140.)  This is also reflected in many
of Dr. Ben-Yishay's reports.  (HPX 426, 427, 428, 429, 430.)  Dr.
Kaplan's report also identified Plaintiff's "most recently
available MRI of the lumbar spine" as one from October 1999.
(HPX 126.)  Again, the record clearly shows that Plaintiff had
many types of scans performed after October 1999, none of which
are discussed, such as an MRI and EMG on December 21, 2000 (HPX
416, 430), an MRI on August 21, 2001 (HPX 412), and x-rays and a

CT scan performed on September 21, 2001 (HPX 424), to name a few.

The Court finds that a person remotely familiar with Plaintiff's medical records would find Dr. Kaplan's cursory 45 minute review erroneous and undeserving of the weight given to it by VPA.  Defendants' unfounded reliance on a error laden summary by a physical therapist further supports the Court's finding that VPA acted arbitrarily and capriciously.

### 4. Dr. Weiner's Review

VPA requested an independent psychiatric evaluation of Plaintiff during her short term disability.  (Curry Dec. at ¶ 17.)  Dr. Weiner met with Plaintiff in December 2001, a month prior to her filing for LTD benefits.  Dr. Weiner concluded "[t]here is no question in my mind that she is extremely depressed, and the depression is secondary to the pain that she is in. . . . [and] that she is unable to work now or in the near future."  (HPX 290.)  Dr. Weiner's consultation focused on Plaintiff's psychiatric health, although Defendants admit that he is both a psychiatrist and neurologist.  Defendants were not required to seek an independent medical examination ("IME").  Courts have recognized that plan administrators do not have any burden or obligation under the law to obtain additional medical evidence or to conduct an independent medical examination of a claimant.  See Pinto, 214, F.3d 394, n. 8, see also Marques, 1999 WL 1017475, at *5, n.2.  Moreover, under the Supreme Court's

23

decision in <u>Nord</u>, Defendants were not obligated to accord special deference to Plaintiff's treating physicians' opinion, and therefore, had Defendants conducted its own independent physical medical examine, it would have been justified in placing reliance on those results without providing a special explanation of its decision to do so.  <u>Nichols v. Verizon Communications, Inc.</u>, 78 Fed. Appx. 209, 211 (3d Cir. 2003).

However, even though Dr. Weiner's opinion did not directly relate to Plaintiff's neurological condition, his conclusions are significant as they mirror those of Plaintiff's treating physicians.

Defendants aver that Dr. Weiner's report may not be considered because Plaintiff's short term disability was labeled as a depressive disorder and, although Dr. Weiner is a neurologist, his "sole diagnosis was major depression."  Since the issue of Plaintiff's mental disorder cannot be considered on review for LTD benefits, Defendants argue, Dr. Weiner's conclusions as to her physical condition was beyond the scope of his evaluation.  Defendants' reasons for excluding the independent report, however, are self-serving because VPA may have erroneously labeled Plaintiff's short term leave as resulting from a depressive order even though she made her claim based on "neurological problems."  (HPX 336, 379; Defs' Statement at ¶ 15.)  It did so despite the fact that its own records

indicated her disability may have been due to a work related back injury.  (HPX 366, 377, 379.)

Moreover, because VPA provided no list of what records concerning Plaintiff's ailments it deemed "caused or contributed to by" her "underlying depression," it disregarded any such information.  (HPX 120.)  That loophole left Defendants free to discount any unfavorable medical report that related to or dealt with her depression.

**IV. Conclusion**

For the reasons stated above, the Court finds that Defendants' denial of Plaintiff's LTD benefits under the Plan was arbitrary and capricious.  Accordingly, Defendants' motion for summary judgment is **denied**.  Plaintiff's cross motion for summary judgment is **granted**.

An appropriate Order follows.


_____ /s/ William G. Bassler _____
_____WILLIAM G. BASSLER, U.S.S.D.J.


Date: March 13, 2006